IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

CLARA DAYE, on her own behalf,
and as class representative,

    Plaintiff,

v.                                                                                  No.

RICHARD BARR,
EDWARD BOREAS,
THE ESTATE OF TIMOTHY FLANAGAN,
ARDYTH KENNEDY,
DENNIS RICE, and
R&L MANAGEMENT CO., INC.,

    Defendants.

## COMPLAINT

1. Plaintiff brings this action against the owners of Speedy Loan, a New Mexico predatory lender against which Plaintiff has a $7.3 million class action judgment. Defendants knowingly used the Speedy Loan business to make illegal, usurious payday loans to New Mexico consumers for years. Before and after the class action was filed, Defendants profited handsomely by draining the assets of Speedy Loan. Now, as a result of Defendants' wrongdoing, Speedy Loan refuses to pay a penny of the judgment against it.

2. Plaintiff brings claims pursuant to New Mexico's Uniform Voidable Transactions Act, NMSA §56-10-14 *et seq*., for breach of fiduciary duty, for declaratory judgment piercing the corporate veil, and for punitive damages.

## Jurisdiction and Venue

3. This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332, because the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of different states.

4. Venue is proper in this judicial district because the events or omissions giving rise to the claim occurred here.

## Parties

5. Plaintiff Clara Daye is a resident of Pinedale, New Mexico.

6. Ms. Daye is the appointed representative of a class of persons ("the Class") in *Daye v. Community Financial Service Centers, LLC d/b/a Speedy Loan*, No. 1:14-cv-00759-JB-SCY (D.N.M., filed August 22, 2014) ("the Lawsuit").

7. Defendant R&L Management Co., Inc. ("R&L Management") is an Illinois corporation.

8. Defendant Richard Barr is a resident of Winnetka, Illinois.

9. Defendant Edward Borreas is a resident of Houston, Texas.

10. Timothy Flanagan was a resident of Austin, Texas. He is deceased. On information and belief, Defendant Estate of Timothy Flanagan is liable for his debts.

11. Defendant Ardyth Kennedy is a resident of San Diego, California.

12. Defendant Dennis Rice is a resident of Aurora, Colorado.

## Defendants Own and Dominate the Business
## of Community Financial Service Centers, LLC, d/b/a Speedy Loan

13. Community Financial Service Centers, LLC, d/b/a Speedy Loan ("Speedy Loan") is a Delaware limited liability company that is registered to do business in New Mexico and licensed under the New Mexico Small Loan Act.

14. Speedy Loan makes consumer loans from twelve locations around the state of New Mexico.

15. Defendants Richard Barr, Edward Boreas, Estate of Timothy Flanagan, Ardyth Kennedy, and Dennis Rice (collectively "the Owners") are the owners of Speedy Loan.

16. Richard Barr is also the sole owner of R&L Management.

17. Speedy Loan is part of a nationwide network of more than 100 consumer loan and check cashing businesses owned by Mr. Barr and incorporated as various business entities.

18. Defendants observe no corporate formalities with respect to Speedy Loan, instead treating it as an instrumentality in their nationwide network of businesses.

19. Defendants, in particular Mr. Barr, exercise domination and control over the operations of Speedy Loan, rendering Speedy Loan an alter ego of Defendants.

## Defendants Used Speedy Loan to Make Illegal Payday Loans in New Mexico

20. In 2007, in response to the payday loan crisis in New Mexico, the New Mexico Legislature amended the state's Small Loan Act to impose restrictions on payday loans. NMSA §§58-15-31 through -39.

21. Among the restrictions was a limit on permissible fees.

22. Defendants, in particular Mr. Barr, were aware of the new restrictions and personally directed unsuccessful lobbying efforts against the amendment of the Small Loan Act.

23. After the amendment of the Small Loan Act, at the direction of Defendants, Speedy Loan continued undeterred to make payday loans charging fees that far exceeded the new legal limit.

24. Speedy Loan took active steps to disguise its misconduct, falsely informing state regulators that it did not make payday loans and deceptively calling its payday loans "installment loans."

25. Although Defendants were aware of the ongoing injury they were causing consumers, they failed to adequately capitalize Speedy Loan to cover potential liabilities.

26. Defendants actively paid themselves exorbitant distributions, as detailed further below, draining the business of assets.

27. Defendants failed to obtain insurance to cover any of the potential claims against Speedy Loan for violation of consumer protection laws.

28. Speedy Loan made four illegal payday loans to Ms. Daye.

### Defendants Used Speedy Loan to Make Illegal Payday Loans Even After Being Sued

29. On August 22, 2014, Ms. Daye filed a putative class action against Speedy Loan in the United States District Court for the District of New Mexico, *Daye v. Community Financial Service Centers, LLC d/b/a Speedy Loan*, No. 1:14-cv-00759-JB-SCY (D.N.M., filed August 22, 2014) ("the Lawsuit").

30. After being sued in the Lawsuit, at the direction of Defendants, Speedy Loan continued to make illegal payday loans.

31. Customers who took out loans after the filing of the Lawsuit on August 23, 2014 were still charged illegal fees, in some cases more than 20 times the legal amount.

32. To protect itself from liability for its continued wrongdoing, Speedy Loan put an arbitration clause in its form contract, intentionally designed to prevent future victims of its unlawful conduct from seeking relief in class action lawsuits.

## The District of New Mexico Entered a $7.3 Million Judgment Against Speedy Loan for Illegal Payday Loans

33. In the Lawsuit, Ms. Daye alleged that Speedy Loan entered into illegal payday loans in violation of the federal Truth in Lending Act, 15 U.S.C. §1601 *et seq.* ("TILA"), the Electronic Funds Transfer Act, 15 U.S.C. §1693 *et seq.* ("EFTA"), and the New Mexico Unfair Practices Act NMSA §57-12-1 *et seq.* ("UPA"). Ms. Daye also alleged that because each payday loan violated the New Mexico Small Loan Act, NMSA §58-15-1 *et seq.*, each loan is void.

34. In the Lawsuit, Ms. Daye sought certification of a Class including consumers who had entered into one or more loans with a Speedy location in New Mexico within the four years preceding the filing of the Lawsuit.

35. In the Lawsuit, Ms. Daye requested damages and other relief, including the return of all interest and other charges other than principal.

36. The Lawsuit was served on Speedy Loan's registered agent on August 26, 2014.

37. At or about the time the Lawsuit was served, Defendants became aware of the Lawsuit.

38. Based on the claims set forth in the Lawsuit, as of the date of service of the Lawsuit (if not earlier), Defendants were on notice of claims against Speedy Loan worth at least $7,366,257.94, the amount of the eventual judgment.

39. Based on the claims set forth in the Lawsuit, Speedy Loan was "insolvent" as of August 22, 2014, as defined by NMSA §56-10-16.

40. On February 9, 2016, the Court appointed Ms. Daye the representative of a Class consisting of "all persons who, beginning four years before Daye filed the Complaint, entered into a loan with Speedy Loan."

41. The case went to trial on March 15, 2017.

42. In its Memorandum Opinion and Order entered on November 30, 2017, the Court found that "Speedy Loan has known of the New Mexico Small Loan Act's provisions governing payday loans since at least August 22, 2010" (internal quotation marks omitted).

43. This knowledge notwithstanding, the Court found that "[b]etween August 22, 2010 and August 22, 2014, 31,074 of Speedy Loan's 31,082 New Mexico loans charged more than the legal fee for payday loans" (internal quotation marks and brackets omitted).

44. The Court concluded that "Speedy Loan cannot plausibly assert that it inadvertently made payday loans."

45. Based on its Findings of Fact and Conclusions of Law, on November 30, 2017, the Court entered Final Judgment for Ms. Daye and the Class in the total amount of $7,366,257.94 ("the Judgment").

### Defendants Undercapitalized Speedy Loan and Made Fraudulent Transfers Throughout the Lawsuit, Injuring Ms. Daye and the Class

46. Speedy Loan refuses to pay any amount toward the Judgment.

47. Speedy Loan asserts that it does not have the money to pay the Judgment.

48. However, since the filing of the Lawsuit, Speedy Loan transferred more than $1 million to the Owners.

49. On their face, Speedy Loan's financial statements make it appear that the business is operating at or near a loss.

50. Each year, Speedy Loan pays what it misleadingly lists on its financial statements as a "management fee."

51. The management fee is a disguised distribution to the Owners.

52. Only a very small portion of the management fee goes to employees of an affiliated business in Wisconsin in compensation for actual management services for Speedy Loan in New Mexico.

53. The vast majority of the management fee is channeled to Defendant R&L Management Co., Inc. ("R&L Management").

54. R&L Management is owned entirely by Defendant Richard Barr.

55. R&L Management then distributes the management fee to the Owners in proportion to their share of ownership of Speedy Loan.

56. This management fee is not in exchange for any reasonably equivalent value; the Owners other than Richard Barr, play little role in the day-to-day management of Speedy Loan. While Richard Barr directs and is aware of Speedy's day-to-day operations, his role does not justify the extremely sizable payments he receives.

57. In 2014, immediately after being served with the Lawsuit, at the direction of Defendants, Speedy Loan not only continued paying the management fee, but increased it.

58. Defendants acted with the actual intent to hinder, delay or defraud Ms. Daye and the Class by transferring the assets of Speedy Loan to the Owners.

59. As a result of Speedy Loan's undercapitalization, lack of insurance, and distributions to Defendants, Speedy Loan cannot pay its liability to Ms. Daye and the Class.

60. Defendants' misconduct caused harm to Ms. Daye and the Class. Through their fraudulent actions, Defendants have siphoned off and unlawfully diverted for their own purposes money that rightfully belongs to Ms. Daye and the Class, absent which Ms. Daye and the Class would be in receipt of at least some of the judgment they are entitled to by law.

### First Claim for Relief: Voidable Transactions

61. The transfers of Speedy Loan's assets to Defendants, including the distributions disguised as "management fees" constituted voidable transactions pursuant to the Uniform Voidable Transactions Act, NMSA §§56-10-18 and -19. Those transfers made prior to January 1, 2016 (the effective date of the Uniform Voidable Transactions Act) are subject to the New Mexico Uniform Fraudulent Transfer Act, NMSA § 56-10-14 *et seq.*

62. Plaintiff is entitled to damages, avoidance of the transfers, execution upon and attachment of the transferred assets, and injunctive relief barring further disposition of the transferred assets.

### Second Claim for Relief: Breach of Fiduciary Duty

63. Once Speedy Loan entered insolvency due to the claims in the Lawsuit, the Owners owed a fiduciary duty to creditors of Speedy Loan, including Ms. Daye and the Class.

64. The Owners breached their fiduciary duty by draining Speedy Loan of assets that could be used to pay Speedy Loan's liabilities.

65. Ms. Daye and the Class were injured by Defendants' conduct.

66. Plaintiff is entitled to actual and punitive damages for Defendants' breach of fiduciary duty.

### Third Claim for Relief: Declaratory Judgment of Veil Piercing

67. Defendants exercised domination and control over Speedy Loan.

68. Defendants used Speedy Loan for an improper purpose, namely to perpetrate a fraud on Ms. Daye, the Class, and other New Mexico consumers.

69. Defendants' actions caused injury to Ms. Daye and the Class.

70. Plaintiff is entitled to declaratory judgment finding Defendants to be liable for the Judgment.

71. Plaintiff is entitled to entry of judgment against Defendants in the amount of the Judgment.

### Fourth Claim for Relief: Punitive Damages

72. The actions of Defendants were willful, wanton, malicious, reckless, and grossly negligent, so as to warrant an award of punitive damages, in an amount to be determined at trial, as punishment and to deter others from committing like offenses.

73. Plaintiff is entitled to punitive damages.

Wherefore Plaintiff respectfully requests the following relief:

A. Damages, avoidance of the transfers, execution upon and attachment of the transferred assets, and injunctive relief barring further disposition of the transferred assets, for Defendants' voidable and fraudulent transfers;

B. Actual and punitive damages for Defendants' breach of fiduciary duty;

C. Declaratory judgment finding Defendants liable for the full Judgment entered against Speedy Loan;

D. Punitive damages;

E. Costs and attorney's fees, if allowable; and

F. Any other relief deemed just.

Respectfully Submitted:

*/s/Nicholas Mattison*
Nicholas Mattison
Richard N. Feferman
Feferman, Warren & Mattison
300 Central Ave., SW, Suite 2000 West
Albuquerque, New Mexico 87102

(505) 243-7773
nmattison@nmconsumerwarriors.com

Charles M. Delbaum
National Consumer Law Center, Inc.
7 Winthrop Square, 4th floor
Boston, MA 02110
(617) 542-8010
cdelbaum@nclc.org

Attorneys for Plaintiff